IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DESIREE R.,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil Action No.
5:19-CV-0352 (DEP)

---

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP         HOWARD OLINSKY, ESQ.
Attorneys at Law                 MELISSA A. DELGUERCIO, ESQ.
250 South Clinton Street
Syracuse, New York 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH        JAMES NAGELBERG, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on May 21, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: May 29, 2020
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DESIREE R.,

                        Plaintiff,

vs.                                          5:19-CV-352

Commissioner of Social Security,

                        Defendant.
------------------------------------------------------------x
```

*DECISION* - May 21, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

```
For Plaintiff:    OLINSKY LAW GROUP
                  Attorneys at Law
                  250 South Clinton Street
                  Syracuse, New York 13202
                    BY:  MELISSA A. DELGUERCIO, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  15 New Sudbury Street
                  Boston, MA 02203
                    BY:  JAMES J. NAGELBERG, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE COURT:  I'd like to thank both counsel for
2    excellent presentations.  You've presented me with an
3    interesting case and I enjoyed working with you on it.
4          The plaintiff has commenced this proceeding
5    pursuant to 42, United States Code, Sections 405(g) and
6    1383(c)(3) to challenge a determination by the Commissioner
7    that she was not disabled at the relevant times and,
8    therefore, ineligible for the benefits sought until the
9    Medical-Vocational Guidelines, of course, directed a finding
10   of disability based on her age.  The background is as
11   follows.
12         Plaintiff was born in January of 1967.  She is
13   currently 53 years old.  She was 40 years of age at the time
14   of the alleged onset of her disability in November of 2007,
15   and 52 at the time of the Administrative Law Judge's decision
16   in January of 2019.
17         Plaintiff stands 5-foot, 7-inches in height and
18   weighs at various times between 185 and 198 pounds.
19   Plaintiff lives in Baldwinsville with her husband in a
20   one-story home.  Plaintiff completed ninth grade.  She did
21   not receive a GED and was not in special education classes
22   when she was in school.  Plaintiff is right-handed and she
23   drives.
24         Plaintiff was working at various places and in
25   various positions.  It looks like from 2002 to 2006 or 2007,

1  the record is equivocal, she worked in garden centers of
2  large retail stores, including Walmart and Kmart.  She was
3  also a driver's helper in 2007 for one day and worked briefly
4  in 2011 as a health aide in a nursing home.  That was not
5  deemed to be substantial gainful employment.
6           Plaintiff was involved in a motor vehicle accident
7  where she was working as a UPS driver helper.  The vehicle in
8  which she was traveling was rear-ended by an intoxicated
9  driver resulting in a neck injury and a potential concussion.
10          Plaintiff suffers from cervical degenerative disc
11 disease, rheumatoid arthritis, bilateral knee pain,
12 headaches, bilateral tendinitis in arms, and lower back pain.
13 She has undergone various forms of treatment, including
14 physical therapy, injections, and medications.  She does not
15 use any assistive devices.
16          In 2018 she suffered a cat bite which became
17 infected and resulted in surgery.  She does not apparently
18 have any residual limitations associated with that injury.
19          In terms of medications, plaintiff at various times
20 was prescribed Naproxen, Prednisone, Sumatriptan, or Imitrex,
21 Amitriptyline, Celebrex, Hydrocodone, Lidoderm patches, and a
22 Ventolin inhaler for COPD.  At present, however, she
23 testified she only uses 1,000 milligrams of Tylenol as
24 needed.  She attributes the fact that she is not under any
25 prescribed medications to the lack of insurance.

1           Plaintiff has fairly robust activities of daily
2    living.  She cooks daily.  She cleans.  She does dishes, does
3    her laundry.  Some of those tasks she receives help from her
4    husband for.  She feeds and cares for animals, shops, bathes,
5    grooms, dresses, socializes, visits friends, plays video
6    games, enjoys puzzles, watches television, listens to the
7    radio, and reads.
8           Plaintiff is a smoker.  She at one point in 2014
9    was smoking one pack per day.  That's at page 298 of the
10   Administrative Transcript.  She stated elsewhere, at pages 49
11   and 374, that she smokes less than one pack of cigarettes per
12   day.
13          Procedurally, plaintiff initiated an administrative
14   claim for benefits under both Title II and Title XVI of the
15   Social Security Act in April of 2014, alleging an onset date
16   of November 21, 2007.  She claimed at page 179 of the
17   Administrative Transcript that she was disabled based on
18   dislocated disc in the neck, tendinitis in both arms,
19   migraines, arthritis in the neck, and arthritis in both
20   knees.
21          A hearing was conducted to address plaintiff's
22   claim for benefits on November 19, 2015 by Administrative Law
23   Judge John P. Ramos.  Administrative Law Judge Ramos issued
24   an unfavorable decision on December 28, 2015.  That became a
25   final determination of the Agency on May 9, 2017, when the

1  Social Security Administration Appeals Council denied
2  plaintiff's request for review of that decision.
3           Plaintiff commenced an action in this court,
4  17-cv-728, on July 5, 2017.  The matter was remanded on
5  stipulation of the parties on February 5, 2018.  The Social
6  Security Administration Appeals Council thereafter on
7  June 11, 2018 remanded the matter for additional
8  consideration by the Administrative Law Judge.
9           In its decision at page 417, I'm summarizing, two
10 of the issues that were flagged by the Social Security
11 Administration Appeals Council include a limitation on
12 bending in the neck, where ALJ Ramos apparently believed that
13 the limitation was temporary only.  The Social Security
14 Administration Appeals Council concluded that was error
15 because a more recent assessment continued the restriction on
16 repeated bending of the neck.
17          There was also apparently a lack of treatment notes
18 from plaintiff's provider Dr. Eppolito.  I should have noted
19 earlier that plaintiff's general practitioner/treating
20 physician was Dr. Joseph Eppolito.  And she also underwent
21 treatment early on and following her accident from Dr. John
22 Cambareri of SOS Orthopedics.
23          On remand the Administrative Law Judge conducted a
24 subsequent hearing on November 27, 2018.  Thereafter, ALJ
25 Ramos issued an unfavorable decision on January 18, 2019.

1   This action was commenced by plaintiff on March 21, 2019, and
2   is therefore timely.
3           In his decision ALJ Ramos applied the familiar
4   five-step test for determining disability.
5           At step one, after concluding that plaintiff was
6   insured through December of 2012, ALJ Ramos concluded that
7   plaintiff had not engaged in substantial gainful activity
8   since the alleged onset date of her disability.
9           At step two, ALJ Ramos concluded that plaintiff
10  suffers from severe impairments that impose more than minimal
11  limitations on her ability to perform basic work functions,
12  including cervical degenerative disc disease and rheumatoid
13  arthritis.
14          At step three, ALJ Ramos concluded that plaintiff's
15  conditions do not meet or medically equal any of the listed
16  presumptively disabling conditions set forth in the
17  Commissioner's regulations, specifically considering listings
18  1.02, 1.04 and 14.09.
19          ALJ Ramos then concluded that despite her
20  conditions, plaintiff retains the residual functional
21  capacity, or RFC, to perform sedentary work, with the
22  exception she should not be required to push or pull with her
23  upper extremities.  In addition, the claimant can only
24  occasionally turn her head to the right, but has no
25  limitations for turning her upper torso.  Applying this

1  residual functional capacity, ALJ Ramos concluded that
2  plaintiff is incapable of performing her past relevant work
3  as a salesperson, horticultural and nursery.
4          At step five, ALJ Ramos first noted that if
5  plaintiff were capable of performing a full range of
6  sedentary work, Rule 201.25 would direct a finding of no
7  disability prior to January 26, 2017.  In that period,
8  however, based on the testimony of the vocational expert, ALJ
9  Ramos concluded that plaintiff was capable of performing work
10 available in the national economy, including as an addresser,
11 a document preparer, and an order clerk.
12         ALJ Ramos noted, however, that based on the change
13 in age category as of January 26, 2017, a directed finding of
14 disability under Rule 201.10 would be directed.  Because
15 plaintiff was no longer insured at that point in time, she
16 was found only eligible for Supplemental Security Income
17 benefits under Title XVI, but not disability benefits under
18 Title II.
19         As you know, my task is limited and the standard
20 that I must apply is extremely deferential.  The Court must
21 determine whether the finding of the Agency is supported by
22 substantial evidence and whether correct legal principles
23 were applied.  Substantial evidence is defined as such
24 relevant evidence as a reasonable person would find
25 acceptable to support a conclusion.  It's a deferential

1  standard.  In *Brault versus Social Security Administration*,
2  683 F.3d 443, in 2012 the Second Circuit noted that is an
3  even more demanding standard than the clearly erroneous
4  standard.
5           As one of my colleagues colorfully described it as
6  to overturn a Commissioner's finding, the Court must be hit
7  with something akin to, and I'm paraphrasing, an
8  unrefrigerated fish that is five days old.  Under *Brault*
9  standard, the substantial evidence standard means that any
10 fact found by the Administrative Law Judge can be rejected
11 only if a reasonable factfinder has to conclude otherwise.
12          In this case we're dealing with a closed period for
13 SSI from April 21, 2014 to January 26, 2017, for disability
14 insurance benefits from November 21, 2007 to December 31,
15 2012.
16          Plaintiff raises two main contentions.  One
17 concerns the weight given by the Administrative Law Judge to
18 medical opinions, including of Dr. Eppolito and
19 Dr. Cambareri, two treating sources.  The second deals with
20 the analysis of plaintiff's subjective complaints, what in
21 the past used to refer to the credibility two step analysis.
22          I note as a backdrop that it is plaintiff's burden
23 to establish limitations on her ability to perform work
24 functions through step four.
25          Looking first at the subjective complaints

1   analysis, it's clear that the Administrative Law Judge must
2   take into account the plaintiff's subjective complaints
3   rendering the five-step disability analysis.  Under 20 CFR
4   Sections 404.1529 and 416.929, the ALJ retains the discretion
5   to weigh the credibility of a claimant's testimony in light
6   of all evidence in the record, *Genier versus Astrue*, 606 F.3d
7   46, at 49 (Second Circuit 2010).
8            Clearly a plaintiff's subjective complaints are
9   entitled to significant weight if they're consistent with and
10  supported by objective clinical evidence demonstrating that
11  she has a medical impairment that could reasonably be
12  expected to produce the pain or other symptoms alleged.  In
13  assessing the plaintiff's subjective symptomology, the
14  regulations, as well as SSR 16-3p, which governs, requires an
15  ALJ to consider several factors, including the claimant's
16  daily actives; the location, duration, frequency, and
17  intensity of any symptoms; any precipitating and aggravating
18  factors; the type, dosage, effectiveness, and side effects of
19  any medications taken; other treatment received; other
20  measures taken to relieve the symptoms; and other factors.
21           In the end it is up to the Administrative Law Judge
22  to accept or reject a claimant's subjective testimony,
23  although if it is rejected, the ALJ must exclusively state
24  the basis for doing so with specific sufficient particularity
25  to enable a reviewing court to determine whether those

1  reasons for disability were legitimate and the determination
2  is supported by substantial evidence.
3           In this case the Administrative Law Judge
4  summarized plaintiff's claims at pages 351 and 352 of the
5  Administrative Transcript.  He then looked at the record as a
6  whole, as he must.  He discussed it extensively, the medical
7  record, including the findings of Dr. Cambareri,
8  Dr. Eppolito, and Dr. Ganesh.  He noted that plaintiff only
9  takes Tylenol for pain, which is a proper consideration.  He
10 also noted the significant activities of daily living
11 experienced by the plaintiff.
12          I have reviewed carefully the Administrative Law
13 Judge's decision and have considered the arguments raised by
14 plaintiff's counsel, and I do not find that the plaintiff
15 showed that no reasonable factfinder could reject plaintiff's
16 subjective claims, and, therefore, she has not overcome the
17 necessary burden under *Brault*.
18          In terms of the treating source argument, there is
19 no question that ordinarily the opinion of a treating
20 physician regarding the nature and severity of the impairment
21 is entitled to considerable deference as long as it is
22 supported by medically acceptable clinical and laboratory
23 diagnostic techniques and is not inconsistent with other
24 substantial evidence.
25          Where controlling weight is not given to a treating

source's opinion, the Administrative Law Judge is required to consider several factors, sometimes referred to as the *Burgess* factors, including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the degree to which the medical source has supported his or her opinion; the degree of consistency between the opinion and the record as a whole; whether the opinion is given by a specialist; and other evidence which may be brought to the attention of the Administrative Law Judge.

In this case Dr. Eppolito's medical source statement was discussed in two sections of the Administrative Law Judge's opinion, at page 352 and then again at 353 and extending into 354. I have to say that I would have expected a little more fulsome discussion of Dr. Eppolito's medical source statement; however, the significant and salient portion that was not accepted had to do with the neck, and the Administrative Law Judge's decision explained why that was not accepted. It is inconsistent with plaintiff's testimony where she is able to turn her head to the left but only a quarter of the way to the right. It is also inconsistent with the findings of Dr. Ganesh.

Dr. Eppolito's notes do show some motion limitation, 731 and 758, but Dr. Ganesh did not find any limitation in that regard. Dr. Ganesh's two medical

1    statements, one from 2014, on the use of plaintiff's upper
2    extremity.  At page 298 Dr. Ganesh found with regard to the
3    cervical spine:  Full flexion, extension, lateral flexion
4    bilaterally, and rotary movements bilaterally.  She did go on
5    to find some tenderness in the neck and trapezius.  That's at
6    298 of the Administrative Transcript.
7             In her second examination of the plaintiff, at
8    page 539, Dr. Ganesh found full flexion, extension, lateral
9    flexion, and rotary movements bilaterally in the neck, no
10   cervical or paracervical pain or spasms, and no trigger
11   points.
12            And I guess I will say it certainly appears that
13   the bulk of plaintiff's treatment of the neck followed fairly
14   soon after the 2007 motor vehicle accident.  That's when
15   Dr. Cambareri's treatment came.  And I agree with the
16   Commissioner's counsel that it's clear that Dr. Cambareri's
17   statements were geared toward the Workers' Compensation
18   claim.  The Administrative Law Judge did consider that
19   Dr. Cambareri was a treating source and a specialist, and
20   that Dr. Eppolito was a treating source, but he also notes
21   that Dr. Eppolito's notes, including Exhibit 9F, show very
22   little neck complaints and very little treatment.
23   Dr. Cambareri stated that plaintiff could work without
24   repetitive bending, and there is a limitation on bending of
25   the neck in the residual functional capacity.  And once

1  again, at 375 plaintiff did testify she can turn her neck to
2  the left, only a quarter of the way to the right, with no
3  mention of up or down.
4              Dr. Ganesh's findings, as well as modest X-ray and
5  MRI, objective findings at 294 and 295, 300 and 544, also
6  support the Administrative Law Judge's treatment of
7  Dr. Cambareri and Dr. Eppolito's medical opinions.  The fact
8  that she was not deemed a candidate for surgery and only used
9  Tylenol to address her pain also shows that the treatment
10 that was accorded the opinions of Dr. Eppolito and
11 Dr. Cambareri is supported by substantial evidence and well
12 explained.  Although the *Burgess* factors were not
13 specifically carved out and discussed, review of the record
14 provides an indication that the treating source rule was not
15 violated under *Estrella*.
16             So the third sub argument raised by plaintiff was
17 that the step five burden on the Commissioner was not
18 carried.  The vocational expert in this case was presented
19 with a hypothetical that tracked the residual functional
20 capacity finding, which I conclude was supported by
21 substantial evidence, and based on the vocational expert's
22 testimony, the Administrative Law Judge found available work
23 in the national economy that plaintiff is capable of
24 performing, and, therefore, carried his burden at step five.
25             So, in conclusion, I find that correct legal

```
1  principles were applied, the resulting determination is
2  supported by substantial evidence, and will, therefore, grant
3  judgment on the pleadings to the defendant and order
4  dismissal of plaintiff's complaint.
5          Thank you again.  I hope you both stay safe during
6  these interesting times.
7                    *              *              *
```

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter